THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* QUINTÍN GARAY RESTO, Defendant and Appellant.

No. 12418. Argued November 3, 1947.—Decided December 5, 1947.

*Benjamín Ortiz* and *Alvaro Ortiz* for appellant. *Luis Negrón Fernández, Attorney General,* and *J. Rivera Barreras, Prosecuting Attorney,* for appellee.

Mr. Justice Todd, Jr. delivered the opinion of the Court.

Quintín Garay Resto was prosecuted in the District Court of Humacao for the crime of rape. He was convicted by a jury and sentenced by the court to serve from eight to fifteen years in the penitentiary at hard labor. The defendant appealed and urges that the lower court erred: (1) In permitting Dr. Raúl Yumet, an expert witness, to testify that sexual penetration was accomplished by force; (2) in permitting the testimony of several witnesses for the prosecution, whose names do not appear on the back of the information; (3) in permitting Joaquín Mendoza to testify that the defendant had kept silent when the witness told him "You are arrested for rape"; (4) in permitting Otilio Encarnación to testify as to a conversation which he had with the defendant; (5) in not permitting Juan Sánchez Caballero to testify as to statements made to him by Antonia Rivera Orozco, the prosecutrix.

The first assignment is based on the fact that Dr. Yumet, a medical expert, testified that when he examined the prosecutrix, on the day following the occurrence, he found

that besides a recent laceration of the hymen, "the fact that the perineum was ruptured shows that violence was used in accomplishing the act."

Appellant argues that this statement of the witness usurped the function of the jury, on whom it was incumbent to decide whether the alleged prosecutrix had been raped by force and threats, as was alleged in the information, or whether the sexual intercourse had been indulged willingly, as the defendant alleged. We do not agree with appellant. Such statement of the witness should not be considered separately but together with his whole testimony. It appears therefrom that he explained in detail the reason for his conclusion in saying that, in his opinion, when there is a rupture of the perineum as the result of sexual intercourse, violence has been used; that when the act is spontaneous and the woman is a virgin the hymen is ruptured, but never the perineum.

This is the testimony of an expert witness where he advanced an opinion not only as a consequence of the physical examination which he made on the person of the prosecutrix, but also as a result of his medical experience. His opinion as well as his whole testimony was subject, like that of any other witness, to be accepted or rejected by the jury, according to the credibility accorded to it, especially when another medical expert presented by the defendant gave a different opinion. *People* v. *Sutton,* 17 P.R.R. 327; *People* v. *Bonelli,* 19 P.R.R. 65; *People* v. *Dones,* 56 P.R.R. 210.

The theory set forth by appellant that in admitting in evidence the opinion of an expert, the latter would be "usurping the function of the jury," has been criticized by text writers and it has been rejected by the courts precisely because of the important fact that the jury is not bound to accept as true the opinion of the witness. See 1 Greenleaf on Evidence 551; 7 Wigmore on Evidence 17, § 1920; *Crismore* v. *Consolidated Products,* 5 N. W. (2d) 646, (Iowa

1942); Annotation in 78 A.L.R. 755. Referring to this phrase, Wigmore says:

"This phrase is made to imply a moral impropriety or a tactical unfairness in the witness' expression of opinion.

"In this aspect the phrase is so misleading, as well as so unsound, that it should be entirely repudiated. It is a mere bit of empty rhetoric. There is no such reason for the rule, because the witness, in expressing his opinion, is not attempting to 'usurp' the jury's function; nor could if he desired. He *is* *not* attempting it, because his error (if it were one) consists merely in offering to the jury a piece of testimony which ought not to go there; and he *could* *not* usurp it if he would, because the jury may still reject his opinion and accept some other view, and no legal power, not even the judge's order, can compel them to accept the witness' opinion against their own."

In our opinion the testimony of Dr. Yumet was admissible and it did not usurp the function of the jury who had the opportunity of accepting or refusing it when weighing the whole evidence of the case. This witness merely expressed an opinion, which was contradicted by another expert witness, to the effect that when the act was accomplished, that is to say the sexual act in itself, violence was used, but he did not refer to the mode or manner in which the appellant acted, that is, whether he used force or threats to overcome the resistance of the prosecutrix before accomplishing the act charged. The mode used by the defendant, according to the information, was that he, "by force and threats of serious or immediate bodily harm, together with the apparent attitude of executing them, and against her will and overcoming her resistance," had sexual intercourse with Antonia Rivera Orozco. In his testimony, Dr. Yumet did not refer to any of these particulars, but that "in accomplishing the act" violence was used.

■■ The consummation of an act, in its legal aspect in criminal law, means "one of the states of the offenses which arises when the guilty person has accomplished all the acts

so as to produce, as a result, the infringement of the criminal law, willingly and consciously.'' *Diccionario de Derecho Usual de Guillermo Cabanellas.* And if according to § 257 of the Penal Code, ''Any sexual penetration, however slight, is sufficient to complete the crime,'' we are bound to conclude that the words used by Dr. Yumet, upon referring to the manner in which, in his opinion, the act was accomplished, did not prejudice appellant.

The first error assigned was not committed, nor the second, for we have repeatedly held that the admission of the testimony of witnesses whose names do not appear on the back of the information, is a matter within the discretion of the trial court and we shall not disturb it on appeal in the absence of an abuse thereof. *People* v. *Kent,* 10 P.R.R. 325; *People* v. *Alméstico,* 18 P.R.R. 314; *People* v. *Dones,* 56 P.R.R. 210; *People* v. *Berenguer,* 59 P.R.R. 79—and in the present case it was shown that the district attorney, on motion filed and notified on defendant's attorney several days prior to the trial, requested that the witnesses whose names did not appear on the back of the information be summoned.

The third error refers to the fact that the court admitted the testimony of the policeman who arrested the defendant in the sense that when he told the defendant ''You are arrested for rape,'' the defendant kept silent. Appellant maintains that the fact that he remained silent when he was arrested does not constitute an admission on his part.

He likewise argues in his fourth assignment that the fact that at headquarters defendant said to policeman Otilio Encarnación, after having denied the facts, that ''If the evidence is very strong my wife is so good with me that she will be willing to divorce me so that I can marry the girl'' does not imply an admission either.

Although it does not appear from the record that this statement of Encarnación was objected to or its admission excepted, we have no doubt that it was admissible as well as

the words copied in the third assignment, inasmuch as the statements constituted an admission on the part of the defendant and his silence, upon being informed that he was arrested for the crime of rape, was also admissible insofar as the jury should have considered his attitude in remaining silent. The fact that the person remains silent upon being accused of an offense does not constitute evidence properly speaking of the offense in itself, which should be established by direct or circumstantial evidence, but rather the testimony of the witness is admitted, as was said in *Mc.Cormick* v. *State,* 194 N.W. 347, 351 (Wis. 1923), " . . .in order to enable the jury to understand what reply the accused should make to such charges, and the conduct and reply of the ordinary prudent person under the same or similar circumstances."

■ The last error assigned refers to the fact that the lower court did not admit the testimony of Juan Sánchez Caballero as to statements made by Antonia Rivera Orozco, the prosecutrix.

The court considered that the testimony of the witness tended to impeach the testimony of the prosecutrix as to the fact that she did not want to go in the witness' car when he stopped by the side of the defendant's bus wherein, according to the evidence for the prosecution, the act took place. Accepting, without deciding, that this error was committed, we are of the opinion that it is not prejudicial to the defendant. The evidence for the prosecution which was believed by the jury, was of such a nature that, even accepting the testimony of Sánchez, the jury would have, in our opinion, rendered the same verdict.

The judgment is affirmed.